Filed 3/29/21  In re J.G. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re J.G., a Person Coming Under the Juvenile Court Law. | C092995 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> M.G. et al., <br><br> Defendants and Appellants. | (Super. Ct. No. JV2019260) |

M.G. (mother) and A.T. (father), parents of the minor, appeal from the juvenile court's order denying mother's petition to change the court's order bypassing her for reunification services and thereafter terminating parental rights, freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 388, 395; undesignated statutory references

1

are to this code.)  The parents contend the court erred when it denied their section 388 petition.  We will affirm the juvenile court's orders.

FACTS AND PROCEDURAL HISTORY

On August 6, 2019, the Yolo County Health and Human Services Agency (Agency) filed a dependency petition on behalf of the newborn minor pursuant to section 300, subdivision (b) alleging failure to protect due to mother's long-term untreated substance abuse issues culminating in her positive test for methamphetamine at the minor's birth, as well as father's decades-long substance abuse.  The petition further alleged abuse of sibling pursuant to subdivision (j) based on the termination of mother's parental rights over the minor's two half-siblings in 2010 due to mother's untreated substance abuse.

The detention report chronicled the parents' extensive history of substance abuse, child welfare, and criminal history.  Mother disclosed to the social worker that she began using marijuana when she was nine years old and started using other drugs when she was 14.  She stated she had tried "probably a dozen drug treatment programs" but none of them worked.  She used methamphetamine during her pregnancy and tested positive on July 26, 2019, just prior to the minor's birth when she went to the hospital due to bleeding.

The parents submitted on the detention report.  The court ordered the minor detained and ordered the Agency to assess mother for mental health services and substance abuse treatment and provide both parents with alcohol and drug testing and substance abuse treatment services.

The jurisdiction report stated mother completed a mental health assessment but had not completed substance abuse screening.  Thereafter, both parents refused to meet with the social worker and instead "served" her with a document entitled "Affidavit of Notice of Facts and Contract" purporting to set forth the parents' various rights and

2

demanding return of the minor with no further action by the Agency. The Agency noted it was greatly concerned for the newborn minor's well-being given the parents' long history of substance abuse from which they had been unable to rehabilitate and their chronic homelessness with no provisions to provide for the care of the minor.

The disposition report recommended the court order reunification services for father but bypass mother for services pursuant to section 361.5, subdivisions (b)(10), (11), and (13) due to the fact that she previously failed to reunify with the minor's half-siblings and had not subsequently made reasonable efforts to treat the problems which led to the half-siblings' removal. Both parents reported they were no longer using drugs but refused to drug test. Mother last tested positive for methamphetamine on August 7, 2019, and since then denied any drug use and refused to drug test. She believed the Agency had wrongfully taken the minor from her and refused to meet with the social worker. Father stated he had already completed classes in the past and he did not need more treatment. He believed he was a good parent and felt the minor would not be in danger if placed in an environment where people were using drugs. While father had not visited the minor since birth, mother was reportedly having consistent supervised visits with the minor and interacting appropriately. However, the parents consistently blamed the Agency and refused to participate in services and had no insight into how exposure to drug use was harmful to the minor.

At the October 7, 2019 combined jurisdiction/disposition hearing, the court considered the Agency's report and took judicial notice of the dependency cases involving the minor's half-siblings. The petition was amended as to the subdivision (j) allegation and thereafter sustained by the court. Mother testified she enrolled at a day treatment program and was awaiting intake. She completed a mental health evaluation that resulted in a finding that she did not have any mental health issues. Mother testified she attended the majority of her prenatal appointments while pregnant with the minor, missing only two due to the fact that she was caring for her sick mother. Mother claimed

3

she did not use drugs during her pregnancy other than when she tested positive at the hospital. She admitted using drugs shortly after the current dependency case began. When asked what she would need to be successful if she were given services, mother stated she would need stability in the form of a job. She stated she would participate in services and she was committed to her sobriety.

Mother testified that her drug use had been a problem in the past but was no longer a problem because she was "not using." She stated she did inpatient drug treatment three times in the past and participated in and finished outpatient treatment. Mother stated she had been sober since 2014 until she relapsed in November 2018, and then again just prior to the birth of the minor. She also used methamphetamine when the minor was removed from her care.

Social Worker Angelina Acosta testified that mother's visits with the minor were positive and mother was nurturing and cared for the minor. However, aside from completing her mental health assessment and getting an intake appointment for her substance abuse treatment, mother had not done anything else in her case plan. Mother drug tested once at the beginning of the case and was drug positive. Thereafter, mother refused to drug test until just before the hearing when it was too late to do so. Acosta confirmed that mother had participated in residential treatment in her prior dependency case but later relapsed and was arrested for possession of illegal substances.

The court sustained the allegations in the petition and ordered reunification services, supervised visitation, and immediate drug testing for father. The court bypassed mother for reunification services pursuant to section 361.5, subdivisions (b)(10), (11), and (13) based on the fact that mother's parental rights to the minor's half-siblings were previously terminated and mother failed to make reasonable efforts to address the substance abuse issues that led to termination of those rights. The court also ordered supervised visitation for mother contingent upon mother completing drug testing.

4

The six-month status review report noted that communication with father had been sparse since the October 2019 order for reunification services and included statements from father telling the social worker not to contact him anymore and accusing her of stealing his child, telling lies about him, and using his past conduct against him. Father had minimal participation in parenting classes and no participation in substance abuse testing or treatment services and was not drug testing as ordered by the court.

Mother eventually began participating in a drug rehabilitation program in March 2020 but left after just one week. Otherwise, mother provided no evidence that she had completed any aspect of her case plan. Mother was consistently visiting the minor, but visits could not be increased due to mother's lack of participation in services or proof that she was clean and sober.

The Agency noted that both parents denied any current use but refused to drug test. Mother had been unable or unwilling to rehabilitate until recently and was not able to demonstrate a change of circumstances or that she was clean and sober. The Agency recommended the court terminate father's reunification services and set the matter for a section 366.26 hearing.

The Agency's addendum report filed June 3, 2020, stated that, since the court's bypass order, mother had chosen not to voluntarily engage in services to address the substance abuse issues that led to the minor's removal. Father refused to participate fully in his case plan but nonetheless fought to get the minor back by accusing the Agency of wrongdoing. The parents continued to refuse drug testing. The Agency again recommended that the court terminate father's services and set the matter for a section 366.26 hearing. A second addendum report filed on July 2, 2020, made the same recommendations.

Both parents appeared with their respective counsel via Zoom at the continued six-month review hearing on July 8, 2020. After hearing testimony from visitation supervisor Leandra Barcenas, father, and social worker Amanda Rawnsley, the court

5

adopted the Agency's recommended findings and orders, terminated father's reunification services, set the section 366.26 hearing, and reduced the parents' virtual visits to once a week due to issues with father's inability to control his angry outbursts.

The section 366.26 report noted that mother's virtual visitation with the minor continued to be consistent and to go well. However, mother still had yet to provide any evidence that she was maintaining a substance-free life. The Agency recommended that the court terminate parental rights and order a permanent plan of adoption.

On October 28, 2020, mother filed a petition pursuant to section 388 seeking to modify the court's order bypassing her for reunification services. Mother argued she had been clean since March 4, 2020, was participating in Alcoholics Anonymous (AA) meetings, and had a sponsor and a support system. She argued she had stable employment, housing apart from father, and a registered vehicle. She alleged reinstatement of her reunification services was in the minor's best interests arguing she "would like to preseve [*sic*] the family relationship," visits were consistent and appropriate, and "the minor has siblings and extended family members." Mother attached to her petition numerous items including a letter from her sponsor and evidence of her visitation, car registration, employment, and support system.

On November 4, 2020, the court first addressed mother's section 388 petition. After hearing from counsel for the parties, the court denied the petition without a hearing noting in part as follows: "I could stretch this to say that there's a change of circumstance, but – I'm not even really convinced there's a change of circumstance, but I could maybe go there. I just can't past – I can't find that this is in the best interest of the child, and when I try to fill out this form to give you a hearing, I would have to say that, and I can't."

Regarding the hearing on section 366.26, the parents objected to termination of parental rights but did not want a contested hearing. The court found the minor adoptable and terminated parental rights.

6

Mother contends the juvenile court abused its discretion when it denied her section 388 petition without a hearing. She claims the petition showed both a change in circumstances and that the requested modification would be in the minor's best interests. Father's appellate brief joins in mother's arguments but does not provide any argument or analysis with respect to denial of the section 388 petition. In any event, the claim lacks merit.

A petition to change or modify a juvenile court order under section 388 must factually allege that there are changed circumstances or new evidence to justify the requested order, and that the requested order would serve the minors' best interests. (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 526.) The petitioner has the burden of proof on both points by a preponderance of the evidence. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 48.) In assessing the petition, the court may consider the entire history of the case. (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

" 'A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent . . . might be able to reunify at some future point, does not promote stability for the child or the child's best interests.' " (*In re Mary G.* (2007) 151 Cal.App.4th 184, 206; accord, *In re Casey D., supra,* 70 Cal.App.4th at p. 47.)

The petition must be liberally construed in favor of its sufficiency. (Cal. Rules of Court, rule 5.570(a).) Nonetheless, if the juvenile court finds that even so construed the petition fails to make a prima facie case as to either or both tests under section 388, the court may deny the petition without an evidentiary hearing. (*In re Justice P., supra,* 123 Cal.App.4th at p. 189; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; see Cal. Rules of Court, rule 5.570(d).)

We review the denial of a section 388 petition for abuse of discretion. (*In re S.R.* (2009) 173 Cal.App.4th 864, 870; *In re J.T.* (2014) 228 Cal.App.4th 953, 965.)

Here, the record established that, at best, mother's circumstances were changing. Mother's extensive history of substance abuse and her failure to rehabilitate or maintain her sobriety played a pivotal role in the termination of her parental rights over the minor's half-siblings and in the removal of the minor from her care and custody. In particular, she relapsed in November 2018, then again when she used methamphetamine shortly before giving birth, and on at least one occasion after the minor's birth. Thereafter, she refused to drug test. Mother's section 388 petition alleged she had been clean since March 4, 2020. However, while she also argued she participated in AA and had a sponsor and a support system, she provided no information to support her claim that she was clean and sober. "The petition may not be conclusory. 'Specific allegations describing the evidence constituting the proffered changed circumstances or new evidence' is required. [Citation.]" (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.) Given mother's refusal to drug test and her failure to provide evidence that she completed any aspect of her case plan or adequately addressed her substance abuse issues, her conclusory claim of sobriety was not enough to form a prima facie showing of changed rather than changing circumstances.

Mother's allegations that reinstatement of her reunification services would be in the minor's best interests were similarly lacking. "While the petition must be liberally construed in favor of its sufficiency [citations], the allegations must nonetheless describe specifically how the petition will advance the child's best interests. [Citations.]" (*In re G.B.* (2014) 227 Cal.App.4th 1147, 1157.) Mother's allegations lacked the necessary specificity. The fact that she desired to keep her family together and keep the minor connected to his siblings and extended family was not new and did not demonstrate how providing her with reunification services would be in the minor's best interests, particularly against the backdrop of her minimal effort to engage in any part of her case

8

plan or participate in services that would address her long-time issues with substance abuse. At best, she voluntarily checked herself into a rehabilitation program but left days later. Further, while the record makes plain that mother consistently visited the minor, visits never progressed to unsupervised and were never increased because mother refused to engage in substance abuse treatment or testing or demonstrate that she understood the importance of her remaining clean and sober to the safety and well-being of the minor. In sum, even if mother's allegations were found to be true at a hearing, they would not have established mother's right to reunification services. (*In re G.B., supra,* at p. 1160.)

The child's best interests "are not to further delay permanency and stability in favor of rewarding" the parent for her "hard work and efforts to reunify." (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.) Here, the minor had been in the same placement since leaving the hospital for approximately 15 months. Prior to that placement, the minor was in the NICU for 20 days after his birth due to complication of premature birth and prenatal drug exposure, and he remained a medically fragile child who would require continued medical care by specialists due to a compromised immune system, issues regarding his feet, and Fetal Alcohol Syndrome. Mother was unwilling or unable to take the steps necessary to address her substance abuse issues and thereby demonstrate her ability and willingness to appropriately care for the minor. The minor's caretaker, an employee in the medical field, was very committed to and bonded with the minor, had been providing the minor with the daily routine necessary for healthy development and attending to his many medical issues, and had the capacity and willingness to meet the minor's needs in the future.

Mother argues the juvenile court misunderstood the level of proof required to trigger a hearing on her petition. However, as she aptly notes, section 388, subdivision (d) provides that, "[i]f it appears that the best interests of the child . . . may be promoted by the proposed change of order . . . , the court shall order that a hearing be held. . . ." As

9

set forth above, mother's petition did not establish a prima facie showing that providing mother with reunification services would be in the minor's best interests.

Under these circumstances, we conclude the court did not abuse its discretion in denying mother's section 388 petition without a hearing.

DISPOSITION

The juvenile court's orders are affirmed.

_____

HULL, Acting P. J.

We concur:

_____

MAURO, J.

_____

HOCH, J.